UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| TODD JOLLY, | ) | Civil No. 5:21-cv-00017-GFVT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| THURMAN PAIGE, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*

This matter is before the Court on Defendant Thurman Paige's Motion to Dismiss the Complaint.  [R. 8.]  Defendant Paige contends that Plaintiff's Complaint fails to state a claim upon which relief may be granted under the Americans with Disabilities Act.  [*Id.*]  For the reasons explained below, Defendant Paige's Motion will be **DENIED**.

**I**

Plaintiff Todd Jolly owns a certified service animal, named Luke, who is trained to notice, observe, and perform specific tasks designed to alleviate Mr. Jolly's depression, anxiety, and post-traumatic stress disorder.  [R. 9 at 2.]  On August 21, 2020, Mr. Jolly entered the Fleming County Judicial Center with Luke in order to attend a family court appearance related to a custody and visitation matter with his ex-wife.  [*Id.* at 3.]  While in the courtroom, Mr. Jolly was approached by Defendants Fleming County Deputy Sheriff Jennifer Warder and Kentucky State Trooper Thurman Paige.  [*Id.*]  Mr. Jolly alleges that, when approached, he was questioned about his service animal.  [R. 1 at 3.]  Then, Deputy Warder and Trooper Paige, acting on a

bench warrant, removed Mr. Jolly from the courtroom and took him to an interview room within the courthouse. [*Id.*;R. 9 at 3.] In the interview room, Mr. Jolly alleges that Deputy Warder and Trooper Paige: (1) took and read Plaintiff's confidential medical information without consent; (2) required Plaintiff show Luke performing his duties; (3) required Plaintiff to provide them with Luke's paperwork certifying him as a service animal. [R. 9 at 3–4.] Mr. Jolly further alleges that, at a later time, Deputy Warder and Trooper Paige returned him to the family court courtroom in handcuffs for the remainder of the hearing without his service dog Luke. [*Id.* at 3.]

As it relates to Kentucky State Trooper Thurman Paige, Jolly alleges that Paige, acting in his official capacity, demonstrated a deliberate indifference and disparate treatment of Jolly in violation of Title II of the Americans with Disabilities Act. [*Id.* at 6.] Specifically, Jolly alleges that Paige: (1) violated Title II of the ADA, 42 U.S.C. §§ 12131–12134, and the implementing regulation codified at 28 C.F.R. § 35.136(g), by requiring Jolly to return to the family court proceedings without his service animal; (2) violated the implementing regulation codified at 28 C.F.R. § 35.136(f) by both inquiring as to Jolly's medical condition and asking questions regarding Jolly's service animal. [*Id.* at 5–6.] Paige then filed the present motion to dismiss, arguing that Jolly has failed to allege a *prima facie* ADA case against him.[1] [R. 8.]

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation

---

[1] Paige also argues that the claims against him in his personal capacity should be dismissed. [R. 8.] This, however, is a moot point as Plaintiff has amended his complaint to substitute the individual-capacity allegations with official-capacity allegations. [*See* R. 10 at 1–2.]

omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability ... stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. 544 at 557). According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556).

### A

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing *Turner v. City of Englewood*, 195 Fed.Appx. 346, 353 (6th Cir.2006)). The first two factors are not disputed at this stage, so the Court will turn to the third.

**1**

**a**

The Justice Department, which Congress directed to issue regulations to carry out the provisions of Title III,[2] 42 U.S.C. § 12186(b), has promulgated a regulation and commentary discussing the use of service animals in places of public accommodation. The regulation states: "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). The ADA regulations under Title III further provide that "[s]ervice animal means any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items." 28 C.F.R. § 36.104. "There are no requirements as to the amount or type of training that a service animal must undergo, nor the type of work or assistance that a service animal must provide, but the animal must be trained to perform tasks or do work for the benefit of a disabled individual." *Rose v. Springfield–Greene County Health Dept.*, 668 F.Supp.2d 1206, 1214–15 (W.D. Mo. 2009) (citing *Access Now, Inc. v. Town of Jasper, Tenn.*, 268 F.Supp.2d 973, 980 (E.D. Tenn. 2003)). Relying on the regulations and the DOJ's publications, courts generally recognize that "the ADA prohibits public accommodations from requiring proof that an animal is a service animal." *See,*

---

[2] While there is no parallel regulation related to public entities promulgated under Title II until the 2010 ADA Amendments, "federal courts have repeatedly held that a public entity has the same legal obligation as a public accommodation to make reasonable modification[s] … to policies or procedures to allow service animals access to facilities and places of public accommodation when necessary to avoid discrimination on the basis of disability." *E.F. by Fry v. Napoleon Comm. Schools*, 2019 WL 4670738, at *13 (E.D. Mich. Sept. 25, 2019) (internal quotations omitted).

*e.g., Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1185 n. 11 (11th Cir. 2007); *see also Napoleon Comm. Schools*, 2019 WL 4670738 at *13.

Plaintiff has sufficiently alleged that Paige improperly demanded proof as to qualifications of Plaintiff's dog. [R. 1 at 3–4.]  Paige argues, however, that in order to meet the third factor, he "would [have] had to intentionally violate plaintiff Jolly's rights under the ADA and discriminate against him solely because of his disability." [R. 12 at 2]; *see Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008), *overruled in part by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015).  Plaintiff alleges that Paige had an extra-marital affair with his wife, motivating Paige's discriminatory behavior here, along with other occasions of harassment. [R. 10.]  Even accepting those allegations as true, Paige argues those motives do not show that Plaintiff was intentionally discriminated against *solely because of* his disability. [R. 12 at 2–3.]

Contrary to Paige's citations, the Sixth Circuit no longer requires that discrimination be "solely" because of the plaintiff's disability when considering the third factor. *Anderson*, 798 F.3d at n.1.  Rather, this Court must determine whether Paige's alleged discrimination was "because of" Plaintiff's disability, which the Sixth Circuit has read in similar contexts to be a "but-for" test. *See Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012) ("The ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision").  Consequently, the question before this Court is but-for Plaintiff's disability, would Paige have approached him and inquired into the qualifications of his service animal.  Plaintiff's Complaint alleges that Paige and Warder approached him in the courtroom and initially questioned him about his dog *before* leading him to a separate room pursuant to a bench warrant.

5

[R. 1 at 3.] Drawing all inferences in his favor, Plaintiff's allegations support the reasonable inference that Plaintiff having a service dog with him was a but-for cause of Paige approaching and questioning him in the courthouse. Consequently, Plaintiff has established his *prima facie* case of intentional discrimination under Title II of the ADA.

**2**

Lastly, Paige attempts to circumvent liability by arguing that he is not an employee of, and therefore exercises no authority within either the local courthouse or county jail.[3] [R. 12 at 2.] As Paige himself notes, however, he is vested with the power to execute arrest warrants "in any parts of the state." KRS 16.060. To that end, Paige is not arguing that he did not have the power to arrest Plaintiff in the Fleming County Judicial Center. [R. 12 at 2.] Paige has failed to develop his assertion that a Kentucky State Trooper is somehow relieved of ADA liability when discriminating against an individual simply because the Trooper is not an employee of the local government building where the discrimination takes place. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (finding that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived). Such a loophole, in fact, "would undermine Congress' stated purpose eradicating discrimination against disabled persons" through the ADA. *E.E.O.C. v, Ford Motor Co.*, 782 F.3d 753, 765 (6th Cir. 2015) (quoting *Smith v. Ameritech*, 129 F.3d 857, 868 (6th Cir.1997)). Consequently, Paige is not entitled to the dismissal of this case on those grounds.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Defendant Thurman Paige's Motion to Dismiss [**R. 8**] is **DENIED**.

---

[3] Paige's argument is unencumbered by any caselaw or citation.

This the 9th day of August, 2021.

Gregory F. Van Tatenhove
United States District Judge